1  Peter Kristofer Strojnik, SBN 242728
   pstrojnik@strojniklaw.com
2  Law Offices of Peter Strojnik
   Esplanade Center III, Suite 700
3  2415 East Camelback Road
   Phoenix, Arizona 85016
4  Telephone: (415) 450-0100

5  Attorneys for Plaintiff THERESA BROOKE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: 2:22-cv-4691 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT** |
| vs. | |
| PROFFICIENT HOTEL LP, a California limited partnership, | Date:  November 4, 2022<br>Time:  1:30 p.m.<br>Judge: Fernando L. Aenlle-Rocha |
| Defendant. | |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 4, 2022, 2022 or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha in Courtroom 6B, in the United States District Court located at 350 West 1st Street, Los Angeles, California, Plaintiff Theresa Brooke will and hereby does move this Court for an Order entering default judgment against Defendant pursuant to Rule 55, Federal Rules of Civil Procedure. The grounds for this Motion are that Defendant has failed to defend within the time proscribed by Rule 12 and the Clerk of the Court has entered default against Defendant.

With this Motion, Plaintiff respectfully prays for the entry of judgment against Defendant in the following particulars:

- ✓ Declaratory relief that Defendant Title III of the Americans with Disabilities Act;

- ✓ Injunctive relief ordering Defendant to modify the hotel to comply with Section 503 of the 2010 Standards of Accessible Design;

- ✓ Closure of the hotel if Defendant does not remediate the barrier alleged within 60 days of Judgment;

- ✓ Attorneys fees in the amount of $5,250.00; and,

- ✓ Costs in the amount of $400.00.

This Motion is based upon the below Memorandum of Points and Authorities and exhibits thereto. A proposed form of Order and Judgment is attached hereto.

RESPECTFULLY SUBMITTED this 25th day of September, 2022.

**LAW OFFICES OF PETER STROJNIK**

By /s/ Peter Kristofer Strojnik
     Peter K. Strojnik (242728)
     Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

#### A. Facts Alleged in the Complaint

Plaintiff Theresa Brooke ("Plaintiff") is a disabled woman who only has one leg; she ambulates with the aid of a wheelchair. Doc. 1 at ¶1. Defendant owns and/or operates and does business as the Crowne Plaza Los Angeles Harbor Hotel located at 601 South Palos Verdes Street, San Pedro, California (the "Property"). *Id*. at ¶2.

Plaintiff and her husband are habitual travelers to California for purposes of ADA testing and leisure travel. *Id*. at ¶8. In July of this year, Plaintiff and her husband traveled to the Los Angeles area to test accessibility at local hotels for and for leisure. *Id* at ¶9. During this trip, Plaintiff personally visited the Property and gained knowledge of a barrier there; she discovered that the Property does not have an access aisle at the passenger loading zone. *Id*. at ¶¶10-11. The below photograph shows what an access aisle looks like at a hotel passenger loading zone:



**(Arrow pointing to an example access aisle at a passenger loading zone)**

*Id*. at ¶13. The access aisle provides a safe area and lane of travel for persons in a wheelchair to access the hotel lobby from the passenger loading zone. *Id*. at ¶11. After gaining the knowledge of the barrier at the Property, Plaintiff was deterred from entering. *Id*. at ¶12. She remains deterred from visiting the Property in the future, including her anticipated trip back for required hearings and further testing, and until and unless Defendant remediates the lack of an access aisle at the passenger loading zone. *Id* at ¶12.

## II. ANALYSIS

### A. Standard Governing Motions for Entry of Default Judgment

A district court may enter default judgment against a party whose default has been entered under Rule 55(b) of the Federal Rules of Civil Procedure. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).

The following factors should be considered when deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72.

Once default has been entered, the allegations contained in the complaint, except for damages, are deemed admitted by the non-responding defendant and will be taken as true. Fed.R.Civ.P. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Still, the court must consider "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 3d 2688, at 63 (1998) (footnote omitted); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

### B. Procedural Requirements

4

Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgments: (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person; (4) stating that the Servicemembers Civil Relief Act, 50 App. U.S.C. 521, does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). LRCiv 55-1, 55-2; *PepsiCo, Inc.*, 238 F.Supp.2d at 1174.

Here, Plaintiff has satisfied the procedural requirements.

1) Default was entered against Defendant on September 12, 2022. Doc. 17;
2) Default was entered as to the Doc. 1 Complaint as to Defendant. Docs. 1, 17;
3) The defaulting party is not an infant or incompetent person; it is a corporation;
4) The Servicemembers Civil Relief Act is not applicable in this case; this is an ADA case; and,
5) Although notice of these moving papers is not required by Rule 55(b)(2), Plaintiff *will* concurrently provide notice of these moving papers. Exhibit 1.

**C. The Eitel Factors**

The court must next determine whether the *Eitel* factors are met.

1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, Plaintiff has no recourse other than judgment; Defendant refuses to respond to lawful service. Ex. 1. *See PepsiCo, Inc.*, 238 F.Supp.2d at 1177 (plaintiffs would have no other recourse if a default judgment were not entered). Therefore, Plaintiff would suffer prejudice without recourse against Defendant.

2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which it may recover." *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the two *Eitel* factors involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint [ ] require that plaintiff's allegations state a claim on which it may recover.'" quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Here, Plaintiff makes claims and seeks default judgment under the ADA.

   a. ADA Discrimination

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). Here, Plaintiff alleges that Defendant owns the public accommodation (a hotel). Defendant is therefore liable for violating the ADA if Plaintiff can show that she suffered discrimination at the hotel due to her disability. Discrimination under Title III includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." *Id.*, 12182(b)(2)(A)(iv). The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, 12181(9).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). In addition, "to succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA and (2) the removal

1  of the barrier is readily achievable." *Johnson v. Beahm*, 2011 WL 5508893, *2 (E.D.
2  Cal. Nov. 8, 2011).

3      **(1) Whether Plaintiff Has Standing to Bring an ADA Claim**

4      "[A]s with other civil rights statutes, to invoke the jurisdiction of the federal
5  courts, a disabled individual claiming discrimination must satisfy the case or
6  controversy requirement of Article III by demonstrating his standing to sue at each
7  stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th
8  Cir. 2011). There are two ways to demonstrate ADA standing. A plaintiff must show
9  that she either (1) suffered an "injury-in-fact coupled with an intent to return," or (2) is
10 deterred from returning to the premises after gaining actual knowledge of an ADA
11 barrier. *Chapman v. Pier I Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

12      Plaintiff demonstrates standing pursuant to deterrence. Pursuant to the so-called
13 "deterrent effect doctrine", a plaintiff must allege "actual knowledge of illegal barriers
14 at a public accommodation to which he or she desires access" and that a defendant's
15 "failure to comply with the ADA deters him or her from making use of defendant's
16 facility." *CREEC; see also Chapman*, 631 F.3d at 949 ("A disabled individual also
17 suffers a cognizable injury if he is deterred from visiting a noncompliant public
18 accommodation because he has encountered barriers related to his disability there").
19 When a plaintiff has "actual knowledge" of an illegal barrier at defendant's PPA, the
20 plaintiff need not engage in the "futile gesture" of attempting gain access in order to
21 show actual injury." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th
22 Cir. 2002). "So long as the discriminatory conditions continue, and so long as a plaintiff
23 is aware of them and remains deterred, the injury under the ADA continues." *Id*. at
24 1137. "The relevant question, therefore, is whether the Named Plaintiffs are presently
25 deterred from visiting HPT-owned hotels." *CREEC*.

26      Accepting the allegations pled as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S.
27 444, 448 (2007), Plaintiff is presently deterred from visiting Defendant's hotel because
28 she encountered a barrier. *See* Doc. 1 at ¶¶8-14 (Plaintiff alleging that she personally

visited Defendant's hotel, gained knowledge of the lack of an access aisle at the hotel, and was consequently deterred from entering the hotel because of the barrier). Therefore, Plaintiff adequately alleges constitutional ADA standing pursuant to the deterrent-effect doctrine.

Plaintiff also shows ADA standing via injury-in-fact coupled with an intent to return. The regurgitation by ADA defendants of "intent to return" is really an examination of whether there is a "sufficient likelihood that plaintiff will again be wronged in a similar way." *Chapman*, 631 F.3d at 948. But Plaintiff cannot be wronged again in a similar way because she will not return until the barrier is remediated. Doc. 1 at ¶14. The intent to return argument is "just a roundabout way of challenging the rule that a plaintiff need not engage in a 'futile gesture' to establish Title III standing if she is on notice that the establishment 'does not intend to comply' with the ADA." *CREEC*. "As we held in *Pickern*, 'under the ADA, once a plaintiff has become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Pickern*. The Ninth Circuit has reiterated this basic concept as recently in 2021 in the *Whitaker* trilogy. Whatever the case, Plaintiff's allegations of her desire to return to the hotel and her ability to do so, e.g. that she will be returning (returned) to the Los Angeles area and that she travels to California often , do establish an intent to return…*if Defendant ever remediates*. Therefore, although ADA standing can be shown by demonstrating either deterrence or injury-in-fact coupled with an intent to return, Plaintiff demonstrates both.

**(2) Whether Plaintiff Has Shown She is Disabled and the Hotel is a PPA**

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities …[,] a record of such an impairment[,] or being regarded as having such an impairment. 42 U.S.C. 12102(1). Major life activities as defined by the ADA including walking and standing. *Id*., 12102(2). Here, Plaintiff alleges that she relies on a wheelchair for locomotion and that

8

she has only one leg. Plaintiff is disabled under the ADA. Additionally, a hotel is a PPA pursuant to 42 U.S.C. §12181(7)(A).

### (3) Whether Plaintiff Has Shown That the Hotel's Architectural Barriers Denied Her Public Accommodations Due to Disability

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. *See Chapman*, 631 F.3d at 950 ("an ADA plaintiff suffers an injury in fact either because discriminatory barriers deter him from returning to a facility or because they 'otherwise interfere with his access to' the facility," quoting *Doran*, 524 F.3d at 1042 n. 5).

Here, Section 503 of the 2010 Standards require that a marked access aisle and a compliant cut-out in the curb at the loading zone of places of public accommodation is required. Plaintiff clearly alleges that she gained knowledge of the lack of an access aisle at Defendant's passenger loading zone while visiting the Hotel. While hotels are not required to have passenger loading zones, Plaintiff alleges that one is present by describing the area as adjacent to the lobby entrance (where) and the area's purpose (pickup and dropoff). Moreover, Defendant admits the existence of the passenger loading zone by failing to defend. The barrier here relates to Plaintiff's disability of having only one leg because access aisles are designed for persons in a wheelchair, not, for example, blind or deaf persons. The barriers alleged deterred Plaintiff and therefore denied her public accommodations due to her disability.

### (4) Whether Modifying the Passenger Loading Zone is Readily Achievable

Whether removal of a barrier is readily achievable involves consideration of four factors: " A) the nature and cost of the action needed …; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of a covered entity with respect to the number of its

9

employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; [and] the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." *Hubbard*, 433 F.Supp.2d at 1168 (citing 42 U.S.C. 12181(9)).

Here, Plaintiff's allegation that removal of the barrier at issue is readily achievable, which is accepted as true, is sufficient to satisfy her burden of production. *See, e.g., Johnson v. Hall*, 2012 WL 1604715, *3 (E.D. Cal. May 7, 2012) (plaintiff's allegation that architectural barriers were "readily removable" and that he sought injunctive relief to remove all readily achievable barriers satisfied his burden); *Beahm*, 2011 WL 5508893 at *3 (holding that plaintiff's allegation that architectural barriers were readily removable was sufficient because it was accepted as true on default; *see also Sceper*, 2009 WL 3763823 at *4 (granting default judgment on plaintiff's ADA claim even though plaintiff did not specifically allege that removal of barriers was readily achievable, and pled instead that defendants were required to remove architectural barriers). Indeed, the placement of an access aisle is a simple fix.

### b. Conclusion RE Second and Third Eitel Factors

Taking the facts alleged in the Complaint as true and adding the evidence presented as exhibits hereto, Plaintiff has shown that the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 3. The Sum of Money at Stake

The fourth Eitel factor balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *See Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, *12 (N.D. Cal. May 29, 2007).

Here, Plaintiff seeks $5,650.00, including attorneys' fees and costs. This amount, plus any amount that would have to be spent to comply with an injunction, would be the

entirety of Defendant's liability should the court enter default judgment. Courts frequently enter default judgments in ADA cases that impose similar financial liabilities on a non-responding defendant who has not shown a willingness to comply with the ADA. *See, e.g. Moore v. Cisneros*, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting that an award of $10,119.70 in the context of a default judgment was "not a particularly large sum of money, nor does it appear unreasonable in light of Defendant's actions"); *Johnson v. Huynh*, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding that $12,000 was a "relatively small award of damages" in a default judgment case); *Mantic Ashanti's Cause ex rel Pinnock v. Darwish Plaza*, 2006 WL 1360969 (S.D. Cal. Apr. 21, 2006) (finding the amount at stake reasonable when plaintiffs sought a total of $16,276.68 consisting of $12,000 in statutory damages for, *inter alia*, architectural entrance barriers and impermissibly narrow paths of travel). The fourth *Eitel* factor is satisfied.

### 4. The Possibility of Dispute

The next *Eitel* factor considers the possibility that material facts may be in dispute. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72. Here, there is no possibility of dispute, as Defendant has not challenged the allegations in the Complaint despite proper service.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may be the product of excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, there is no neglect, as Defendant has ignored the seriousness of this lawsuit. This is so common in ADA cases that it appears intentional.

### 6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Indeed, "Defendant's failure to answer Plaintiff's Complaint makes a decision on

the merits impractical, if not impossible." *Id*. Therefore, the seventh *Eitel* factor weighs in favor of entry of default judgment.

### D. The Character and Amount of Plaintiff's Recovery

Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed.R.Civ.P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Defaulting defendants are not deemed to have admitted facts concerning damages alleged in the complaint. *PepsiCo, Inc*., 238 F.Supp.2d at 1177.

#### 1. Injunctive Relief

A court may grant injunctive relief for violations of Unruh under Civil Code 52.1(h). To be entitled to injunctive relief under 42 U.S.C. 12188(a)(2), the plaintiff must show that Defendant has violated the ADAAG. "In the case of violations of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities …." *Id*.; see *Moeller v. Taco Bell*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011). A plaintiff is not required to satisfy the other prerequisites generally needed for injunctive relief since "the standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller*, 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc*., 643 F3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and removal of the barriers is readily achievable. *See e.g. Moreno v. La Curacao*, 463 Fed.Appx. 669, 670 (9th Cir. Dec. 23, 2011) (Unpub. Disp.); *Johnson v. Singh*, 2011 WL 2709365, *3 (E.D. Cal. July 11, 2011); *Sceper*, 2009 WL 3763823 at *4.

Here, and as noted above, Plaintiff properly pled a violation of the ADA because of Defendant's violation of Section 503 of the 2010 Standards. Also noted above, the allegation that it is readily achievable to modify the passenger loading zone is accepted as true. Accordingly, injunctive relief compelling Defendant to remove barriers at the

hotel facilities so that it is readily accessible to and usable by individuals with disabilities is therefore appropriate.

### 2. Attorneys' Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar" figure presumptively provides an accurate measure of reasonable fees. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional circumstances, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (quoting *Hensley*, 461 U.S. 424) (internal quotation marks omitted).

To get to the lodestar figure, a plaintiff must submit "satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which the district court sits. *Schwartz v. Secretary of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Here, Plaintiff's counsel seeks an hourly rate of $750.00 per hour based on his skill, experience and qualifications. Plaintiff's counsel has been an attorney for 15 years and has prosecuted Title III ADA cases for nearly a decade. Indeed, Plaintiff's counsel has prosecuted approximately 1,000 cases and was the first to argue what the Ninth Circuit held in *CREEC* (personal knowledge of a barrier is not required for ADA standing). Additionally, the number of hours billed is far from excessive. Since Plaintiff's counsel has filed numerous Title III lawsuits, the drafting of the complaint and pre-filing research is streamlined to the extent possible to ensure compliance with Rule

11. The total amount of fees requested in the amount of $5,250.00 is reasonable and not excessive.

    3. <u>Costs</u>

Plaintiff also seeks costs in the amount of $400.00, which represents the filing fee and other minor but necessary costs. Exhibit 1. This cost request is reasonable.

### III. CONCLUSION

For the foregoing reasons, judgment should be entered as requested.

RESPECTFULLY SUBMITTED this 25th day of September, 2022.

**LAW OFFICES OF PETER STROJNIK**

By /s/ Peter Kristofer Strojnik
    Peter K. Strojnik (242728)
    Attorneys for Plaintiff

14